CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

July 22, 2024
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
|  | ) Case No. 5:14-cr-0008 |
| v. | ) |
|  | ) |
| ROGER WESLEY FARRIS II, | ) |
|  | ) By: Michael F. Urbanski |
| Defendant | ) Chief United States District Judge |

### MEMORANDUM OPINION

Roger Wesley Farris, represented by counsel, has filed a second motion for early termination of supervised release. ECF No. 18. The government is opposed to early termination for Farris. For the reasons stated below, the court **DENIES without prejudice** Farris's motion.

### I. Background

On July 7, 2010, Farris pled guilty to one count of persuading, inducing, enticing, or coercing an individual under the age of 18 to engage in prostitution or any sexual activity for which any person can be charged in a criminal offense, or attempting to do so, in violation of 18 U.S.C. § 2422(b). United States v. Farris, No. 2:10-cr-130-DSC (W.D. Pa., complaint filed Mar. 6, 2008) ("Pennsylvania case"). On January 12, 2011, he was sentenced to a 44-month term of incarceration to be followed by a 15-year term of supervised release. Id. at ECF No. 44.[1]

---

[1] Jurisdiction of Farris's supervision was transferred to the Western District of Virginia on February 26, 2014. ECF No. 1 in the instant case.

1

The facts underlying Farris's conviction are egregious. Farris believed he was arranging to have sex with a 10-year-old girl for which he had agreed to pay $700 to her "uncle," who actually was an undercover agent with the Department of Homeland Security, Immigration and Customs Enforcement. Farris repeatedly sought assurance from the "uncle" that the girl was only 10 years old and suggested that he would be able to tell if she were older. Affidavit of Kenneth J. Rochford, ECF No. 1-1 in the Pennsylvania case. Farris was explicit and graphic about the sexual acts he wished to engage in with the girl. Tr. of Detention Hr'g, ECF No. 20 at 9 in the Pennsylvania case. He was concerned about the 10-year-old telling her mother and indicated that he hoped to have an "ongoing relationship" with the child. Id. at 12–14. He arranged for the "uncle" to purchase a toy that Farris could give the child to put her at ease. Id. at 16. Farris was arrested in a hotel parking lot when he approached a truck in an attempt to make contact with a person he believed was the girl, but who actually was a female agent posing as the child. Id. at 21–22.

Farris's sentencing range was 87 to 108 months of incarceration and the court varied downward to a sentence of 44 months "based upon the … totality of the circumstances" and the 18 U.S.C. § 3553(a) factors. Sent'g Mem. in Pennsylvania Case, ECF No. 41 at 1; Tr. of Sent'g Hrg., ECF No. 46 at 26–27. Farris was released from prison to begin serving his term of supervised release on January 17, 2014, and has completed more than 10 years of the 15-year term.

On November 4, 2020, Farris filed a pro se motion for early termination of supervised release, which the court denied without prejudice on April 22, 2021. ECF Nos. 11, 14, 15. At that time, his probation officer was not in favor of early termination for Farris, because it

2

appeared that he had spent many hours viewing images of scantily clad and nude women who appeared to be barely over the age of 18. Mem. Op., ECF No. 14 at 2. Farris filed the pending motion more than three years later, on May 16, 2024.

Farris has completed years of therapy starting while he was on pre-trial supervision and continuing during the time he was incarcerated and since he has been on supervised release. He successfully completed sex-offender treatment in 2019. Mot., ECF No. 18 at 3–4. He continues to participate in a 12-step program for sex addicts and attends three or four twelve-step meetings a week, including a lunch study group that he started. Farris has a sponsor in the group and acts as a sponsor to other participants. Id. at 4. He has passed all his semi-annual polygraph tests, including one in early June 2024. Reply, ECF No. 21 at 1. The United States Probation Officer who supervises Farris advised the court that Farris has done well on supervised release and has had no violations. He has been fully compliant and stays in communication with the officer. Farris continues to voluntarily see a mental health counselor. The probation officer is not opposed to early termination of supervision for Farris.

The court notes that on May 8, 2023, Farris's conditions of supervision were modified to include the following restriction:

> When the defendant searches the Internet, a website, or any other type of online network or environment for pornographic images or videos of adults, he shall not use any term which might allow him to access pornographic images or videos of minors. Such terms include but are not limited to: teen, barely legal, 18+, and amateur.

Order, ECF No. 16. The conditions were modified after Farris's probation officer reviewed Farris's internet searches via a computer monitoring software system and saw that he had viewed websites containing pictures of young women, but not minors. The probation officer

3

had previously warned Farris about using search terms such as "amateur" or "teen." Id. In his motion, Farris avers that the only term he had searched was "amateur," which he understood to denote non-professionally produced adult pornography. Mot., ECF No. 18 at 9 n.3.

Farris seeks early termination of his term of supervision, arguing that he has successfully engaged in efforts at rehabilitation, including attending Sex Addicts Anonymous meetings, and has worked on repairing his relationship with his wife and daughters. He asserts that remaining on supervised release interferes with his ability to achieve financial and professional success because the required computer monitoring software is expensive and makes it difficult for him to find a job.

Farris also argues that continued supervision interferes with his family relationships because his daughters attend college outside of the Western District of Virginia and although he can ask permission to leave the jurisdiction, other jurisdictions, such as the Eastern District of Virginia, will not allow him to travel there. In addition, he is unable to travel with his wife, who is a physician, for business or pleasure. She would like to take work assignments in different locations, but Farris's in ability to engage in unrestricted travel limits her ability to do that. Id. at 6–7.

The government opposes early termination of Farris's term of supervised release, based on the nature and circumstances of his offense, the need to afford adequate deterrence, and the need to protect the public. The government further argues that Farris has not made a compelling showing for early termination. Resp., ECF No. 20.

## II. Analysis

Pursuant to 18 U.S.C. § 3583(e), a court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), terminate a term of supervised release at any time after the expiration of one year of supervised release if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice. The following factors are to be considered: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the United States Sentencing Guidelines; (5) any pertinent policy statement issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among defendants; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

Section 3583(e) allows a conduct-based inquiry into the continued necessity for supervision after an individual has served one full year on supervised release. A court must conclude that early termination is warranted both by the individual's conduct and by the interest of justice. United States v. Pregent, 190 F.3d 279, 282–283 (4th Cir. 1999). Courts have discretion to grant early termination of supervised release, even when the conditions for termination are met. Folks v. United States, 733 F.Supp.2d 649, 651 (M.D.N.C. 2010). In addition, the inquiry is broader than the individual's conduct. Id. (citing Pregent, 190 F.3d at

5

282–283). "Circumstances that justify early discharge have included exceptionally good behavior that makes the previously imposed term of supervised release 'either too harsh or inappropriately tailored to serve' general punishment goals." Id. (quoting United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997)). Neither the passage of time nor full compliance with the terms of supervised release are sufficient bases to warrant early termination. Id. at 652 (collecting cases). But "[a]llocation of scarce resources counsels in favor of terminating supervision in cases . . . where services and oversight are no longer needed." United States v. Lyons, No. CR DKC 13-0282-3, 2020 WL 7769782, at *2 (D. Md. Dec. 30, 2020) (granting motion for early termination of supervised release where the parolee, convicted of a drug trafficking conspiracy and possession of a firearm in furtherance thereof, was transitioning "very well" and he consistently tested negative in random drug testing).

Looking at the § 3553(a) factors, the court finds that the nature and circumstances of the offense and the history and characteristics of the defendant weigh against early termination of supervision. As set forth above, Farris attempted to pay someone to provide him with a 10-year-old girl who he intended to sexually assault. Although the offense occurred more than 16 years ago, its abhorrent nature and Farris's utter disregard for the grave harm he would have caused had he been able to go through with his plan continue to weigh against early termination of supervised release.

Looking at the second factor, the need for the sentence to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed education, vocational training, medical care, or other correctional treatment, the court is concerned that in 2023, the probation officer found it necessary to seek

6

modification of Farris's terms of supervision to order him to not use terms such as "teen, barely legal, 18+, and amateur" when searching for pornographic images of adults. In addition, the officer previously had warned Farris about using search terms such as "amateur" and "teen." Considering the fairly recent need to modify the terms of supervision, the court finds that having Farris remain on supervised release will serve as a continued deterrent to crime and also will serve to protect the public.

Regarding the established sentencing range for the category of Farris's offense, he faced a minimum 5-year term of supervised release and a maximum term of life. The fact that the trial court found a 15-year term of supervision to be appropriate and Farris has served only a little more than 10 years of the term weighs against early termination.

Turning to the need to avoid unwarranted sentencing disparities among defendants, both Farris and the government cite to a case in which this court granted early termination of supervised release to a defendant who had a history of beating and sexually assaulting a child. See United States v. Willard, 4:11-cr-06 (W.D. Va. Oct. 25, 2022). Willard was prosecuted in this court on a charge of failing to register as a sex offender for which he was sentenced to a term of 30 months, to be followed by a 10-year period of supervised release. J, ECF No. 35 in Willard. Willard had a guidelines range of 24 to 30 months and a supervised release range of 5 years to life. Statement of Reasons, ECF No. 36 in Willard. Willard previously had been convicted in state court for the sexual assault and was paroled after serving approximately 79 months. PSR, ECF No. 62 in Willard. After Willard began serving his term of supervision in this court, supervision was revoked when Willard failed to notify his probation officer of a change in residence. He was sentenced to time served and a 10-year term of supervised release

7

on the revocation. J., ECF No. 52 in <u>Willard</u>. When Willard had completed approximately 7 years of his 10-year term of supervised release, he sought early termination, and the court denied his request without prejudice. ECF Nos. 56, 59, 64, 65. Approximately two years later, when Willard had served almost 9 years of term of supervision, he again requested early termination. The government was unopposed to the request and the court terminated Willard's term of supervision. ECF Nos. 66, 68, 69.

Farris argues that he and Willard are similarly situated in that Farris has served 10 years of supervised release and like Willard, has completed sex offender treatment, passed all his polygraph tests, complied with all sex offender registration requirements, and lives with his wife in a stable home. Reply, ECF No. 21 at 1. He also points out that Willard's offense of beating and sexually assaulting a child was more egregious than his own conduct, and that Willard was convicted in state court of failing to register as a sex offender on at least three occasions. <u>Id.</u> at 1–2.

The court agrees that Willard's underlying state court offense was heinous and agrees that Farris has substantially complied with the terms of supervision. However, Willard was not before this court on the underlying sexual assault charge, which was adjudicated in state court. Rather, he was in federal court for failure to register as a sex offender for which he received a top-of-the-guidelines sentence of incarceration and a term of supervision that was twice the length of the mandatory minimum sentence of 5 years. PSR, ECF No. 62 ¶¶ 46, 48. The court granted early termination of the term of supervised release after Willard had served more than 80 percent of the term.

In contrast, Farris received a downward variance from the 87-month bottom of his guidelines sentence to 44 months and has served approximately 10 years of his 15-year term of supervised release. The court does not find that having Farris continue on supervised release creates a sentencing disparity between him and Willard because Farris's sentence of incarceration was much shorter than called for by the guidelines, and he has served only two-thirds of his term of supervised release.

The remaining § 3553(a) factors weigh neither in favor nor against early termination of supervised release.

Farris cites other reasons why he believes his term of supervised release should be terminated. He claims that the computer monitoring software he is required to have on his electronic devices is expensive at $1,000 per year and inhibits his ability to get a job. He also claims that his family relationships suffer because he does not have complete freedom to travel. Farris asserts that these limitations are at odds with the § 3553(a) goals of deterrence, protection of the public, and access to rehabilitation programs because they prevent him "from achieving meaningful professional and financial success and imped[e] his ability to be present for his family." Mot., ECF No. 18 at 5. The court notes that these considerations are not part of the § 3553(a) factors, notwithstanding Farris's attempt to describe them as something other than limits on his personal freedom. However, the court will examine these proffered reasons as part of its consideration of whether the interest of justice would be served by terminating his term of supervision. Pregent, 190 F.3d 279 at 282–283.

First, regarding his ability to find employment, Farris claims that the computer monitoring software causes his computer to "glitch" and that once since he has been on

9

supervised release, he was "barely able" to use his computer for almost a month. He claims that the "constant malfunctioning of the technology ... means Dr. Farris is unlikely to be able to obtain a job that requires or allows him to work from home on his own personal device." Mot., ECF No. 18 at 6. This vague allegation does not describe at what point during the last 10 years of supervision he was unable to use his computer, how often the computer has problems, or how the computer monitoring software makes it unlikely Farris will be able to obtain a job. He does not describe any effort to obtain a job thus far or describe what happened if or when he tried to use his computer to do so. This non-specific complaint about "computer glitches" does not provide a reason to terminate Farris's term of supervision.

Farris also claims that any potential employer would have to agree to have its computer monitored by the government. Mot., ECF No. 18 at 6. This concern is not consistent with the terms of supervision set forth in Farris's judgment. The conditions do not require that an employer must agree to allow monitoring on its equipment. Rather the conditions provide that "[t]he defendant may use a computer in connection with any employment approved by the probation officer provided the defendant notifies the employer of the nature of his conviction. The probation officer shall confirm defendant's compliance with this notification requirement." J., ECF No. 44 at 4 in the Pennsylvania case. Moreover, Farris has not explained if this restriction has actually made it difficult for him to obtain employment as he has not described any jobs for which he has applied, nor any responses related to computer use from any potential employer. This conclusory allegation, without more, does not support a finding that termination of Farris's term of supervision would serve the interest of justice.

10

Farris also asserts that the terms of supervision inhibit his ability to travel. He cites one incident when he would have liked to travel to pick his daughter up from college but was unable to do so because of the travel restrictions. He also claims that travel restrictions are affecting his marriage and family life because he cannot take some vacations with his family and his wife cannot take months-long travel assignments in her job because he cannot accompany her. While the travel restrictions are no doubt inconvenient, Farris does not allege that his or his wife's livelihood depends on his ability to travel, and he does not advise the court as to whether he has attempted to obtain permission for long-term travel or sought any type of modification of the restriction. See United States v. Homer, No. 22-cr-00258-NYW-1), 2024 WL 1621544, at *3 (D. Colo. Apr. 15, 2024) ("Any burden caused by Ms. Homer's travel restrictions (or any other conditions of her probation) is not excessive or unwarranted; it is simply a standard consequence of Ms. Homer's conduct and conviction and is inconvenient, at worst."); Whittingham v. United States, No. 14-cv-7738 (RJS), No. 12-cr-0971 (RJS), 2017 WL 2257347, at *6 (S.D.N.Y. May 22, 2017) (finding that while the defendant bemoaned the fact that he could not travel to visit family in Jamaica without first seeking approval from his probation officer and the court, "the mere inconvenience of making such a request is clearly not a valid basis for terminating his supervision."); see also United States v. Barr, No. 7:17-cr-00085-3, 2022 WL 1750632, at *1 (W.D. Va. May 31, 2022) (Dillon, J.) (granting early termination in part because defendant showed that he worked as a vehicle transporter and lost out on hours of work and career opportunities because of his travel restrictions). In Farris's case, while the travel restrictions create difficulties for him and his

11

family, they are at most inconvenient for him and do not warrant a finding that the term of supervision should be terminated in the interest of justice.

### III. Conclusion

Having considered the § 3553(a) factors and the other reasons cited by Farris, the court finds that termination of his term of supervised release is not appropriate at this time. While Farris's efforts and successes at rehabilitation thus far are laudable, having him remain on supervised release will continue to serve the goals of deterrence of crime and protection of the public. Accordingly, Farris's motion for early termination of supervision is **DENIED without prejudice.**

An appropriate order will be entered.

It is so **ORDERED.**

ENTERED: July 19, 2024

Michael F. Urbanski
Senior United States District Judge